# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ASTOR D. CHANCE, | Case No.: 2:07-cv-00381-RLH-GWF |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#13; |
| | Motion for Emergency Hearing–#17; |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; a municipal entity; OFFICER JUSTIN WHITE; and SGT. REGINA FLOYD, | Motion to Stay–#26; Motion for Reconsideration–#27; Motion to Strike–#29; Motion for Preliminary Injunction–#2) |
| Defendants. | |

Before the Court is Defendants Las Vegas Metropolitan Police Department ("Metro"), Officer Justin White, and Sergeant Regina Floyd's **Motion to Dismiss** (#13), filed May 10, 2007. The Court has also considered Plaintiff Astor Chance's Opposition (#19), filed May 29, 2007, and Defendants' Reply (#31), filed June 8, 2007.

Also before the Court is Plaintiff's **Motion for Emergency Hearing** (#17), filed May 11, 2007; **Motion to Stay All Proceedings** (#26), filed June 4, 2007; and **Motion to Remove All Overly Restrictive Elements of Judge Magistrate Judge Foley's Order** (#27), filed June 4, 2007. The Court has also considered Defendants' respective Oppositions (#30), filed June 8, 2007; (#33), filed June 8, 2007; and (#35), filed June 11, 2007. No Replies have been filed.

1

Also before the Court is Defendants' **Motion to Strike Plaintiff's Improper Opposition to Motion for Summary Judgment** (#29), filed June 7, 2007. No Opposition was filed.

## BACKGROUND

This case arises from Plaintiff's arrest by Metro, the details of which are set forth in Plaintiff's Complaint. On March 4, 2007, Plaintiff alleges to have been working as an armed security guard, patrolling the Saks outlet store in Las Vegas, Nevada. He was wearing a red shirt with "Acme Security" written on the front, a red windbreaker with "Security" written in large yellow letters on the back, a "duty belt," a security hat, and a visible security badge.

While sitting in his car in the parking lot eating his lunch, Plaintiff states that he noticed an increased presence of Metro officers around the store. Two Metro vehicles circled the building, approached Plaintiff's vehicle, and focused their lights on it. The officers, Defendants Officer White and Sgt. Floyd, asked Plaintiff what he was doing there, to which Plaintiff responded that he was a security guard. They then asked Plaintiff to exit the vehicle, which he did, and asked him whether he was armed. When Plaintiff responded, "Why do you ask?," the officers ordered Plaintiff on the ground. Plaintiff refused, alluding that he should not get on the ground if he was not under arrest.

The officers explained that Plaintiff could be a "bad guy in a stolen uniform" and ordered him to get on his knees and turn around so his back faced the officers. As Plaintiff started to comply, he asked whether he was under arrest and the officers told him that he was not, at which time Plaintiff put his arms down and walked to his car. Officer White then followed Plaintiff and began pulling Plaintiff's arms. Plaintiff pushed Officer White away.

Plaintiff contends that after he pushed Officer White away, Officer White drew his weapon. Thereafter, Plaintiff, allegedly under the assertion that he was a "fellow law enforcement officer" and out of fear for his own life, retrieved his gun from his holster and pointed it at Officer White. Thereafter, Plaintiff alleges that Officer White holstered his firearm and engaged in a

AO 72
(Rev. 8/82)

conversation with Sgt. Floyd about how Plaintiff threatened their lives.  When Plaintiff's perceived threat to his life ended, he holstered his gun.

Apparently, Plaintiff recognized Sgt. Floyd from a prior interaction two weeks earlier wherein Plaintiff alleges that he told Sgt. Floyd that he was working security at Saks. Plaintiff complains that rather than Sgt. Floyd making any attempt to defuse or de-escalate the situation or control the "attacks" on Plaintiff by Officer White, she instead watched in amusement and radioed for backup.  Thereafter, approximately ten to twelve Metro vehicles responded to the scene and ultimately arrested Plaintiff after which time he was taken to the Clark County Detention Center.

While being booked and processed, Plaintiff alleges that he was the subject of threats of physical violence by an unknown Metro officer.  He also alleges that he was injected with an unknown substance purported to be a tuberculosis test, but that he was never given the opportunity to review the label on the injection or refuse the injection.  For three days, Plaintiff complains he was exposed to inhumane conditions in the form of cold air and food containing saltpeter.  He also claims to have been damaged by virtue of the fact that inmate telephones at the Detention Center audibly inform the telephone user that the conversation is being recorded and that he was subjected to two unnecessary body cavity searches.

Plaintiff appeared in court on March 8, 2007, to answer to four felony charges stemming from his conduct.  According to Plaintiff, he was forced into accepting a plea bargain that dismissed some of the charges.  He was released from the Detention Center on March 8, 2007, and alleges that his property was not returned to him in violation of a Justice Court order.

Unrelated to the preceding incidents, Plaintiff further alleges that Metro caused him to be terminated from a job as a drywaller because it placed two "non-criminal" "voluntary statement entries" on his criminal history record.  Plaintiff maintains that he requested that the two entries be removed from his record but Metro would not remove the non-criminal entries from his record and that his employer terminated him after three days on the job following a background

1   check. Plaintiff alleges that the entries were placed on his record as part of a "sophisticated,
2   enmeshed and entrenched system of racial discrimination being acted out against [Plaintiff] by
3   [Metro]."
4   In another unrelated instance, Plaintiff alleges that Metro failed to investigate a
5   2004 complaint that five Hispanic co-workers attacked Plaintiff during work. Plaintiff described
6   the co-workers as family members who attacked him as a gang. According to Plaintiff, Metro's
7   investigating officer informed Plaintiff that the family was not a gang and advised Plaintiff that
8   there was nothing more that could be done. Plaintiff complains that the union for which he was a
9   member also failed to investigate the attack and that Plaintiff was forced to stop working following
10  the incident due to the creation of a hostile working environment.
11  For the foregoing events, Plaintiff brings claims for violation of his civil rights
12  under 42 U.S.C. §§ 1983, 1985, along with claims for fraud, false arrest, false imprisonment,
13  malicious prosecution, falsifying entries on his criminal record, intentional infliction of emotional
14  distress, and failure to return property. Defendants move to dismiss all claims. For the following
15  reasons, the Court grants Defendants' Motion to Dismiss.
16  In addition, various other Motions were filed by the Parties. As outlined below, the
17  Court grants Defendants' Motion to Strike and denies Plaintiff's Motion for Preliminary
18  Injunction, Motion for Emergency Hearing, Motion to Stay and Motion for Reconsideration.
19  **DISCUSSION**
20  **I. Motion to Dismiss Standard**
21  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may
22  dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint
23  should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff
24  can prove no set of facts in support of his claim which would entitle him to relief." *Yamaguchi v.*
25  *U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997) (citation omitted). All factual
26  allegations set forth in the complaint "are taken as true and construed in the light most favorable to

AO 72
(Rev. 8/82)

[p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citation omitted).

**II. 42 U.S.C. § 1983**

To maintain a successful § 1983 action, a plaintiff must establish the following two elements: (1) the conduct complained of must have been committed by an individual acting under the color of law; and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Here, the first element is undisputed. Regarding the second element, Plaintiff alleges a deprivation of various constitutional rights, each of which the Court discusses.

**A. Plaintiff's Seizure and Subsequent Arrest**

Concerning the events surrounding Plaintiff's seizure in the Saks parking lot, Plaintiff appears to assert a violation of his Fourth Amendment rights. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (stating that claim arising from an arrest or investigatory stop of a free citizen most often invokes Fourth Amendment rights). In this context, the test is whether the seizure or force used was reasonable. *Id.* at 395. To determine its reasonableness, the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations and citations omitted).

Specifically, a court must look at: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of police officers and others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The question is whether the totality of the circumstances justified the particular police action. *Id.* Further, police conduct is analyzed from the perspective of a reasonable officer on the scene without the benefit of hindsight. *Graham*, 490 U.S. at 396.

AO 72
(Rev. 8/82)

1         In evaluating the events surrounding Plaintiff's seizure in the Saks parking lot in light of the *Garner* factors above, the Court finds that both Officer White's and Sgt. Floyd's conduct was reasonable. First, the severity of the crime at issue was great. Defendants explained to Plaintiff that they thought he might have been a fraudulent security guard. When Defendants asked Plaintiff whether he was armed, Plaintiff ignored their inquiries. By not answering their questions, Plaintiff gave Defendants reasonable suspicion that he may be armed. When Defendants ordered Plaintiff to the ground, Plaintiff again ignored them, walked to his car, and pushed Officer White away. The situation escalated when Officer White pulled out his firearm and Plaintiff followed suit. Certainly, the severity of the crime was not minor.

        Second, Plaintiff posed an immediate threat to Defendants by pointing his firearm at Officer White. Through his conduct, Plaintiff gave the impression that he had no intention of complying with police orders. Defendants had more than a reasonable basis to believe their lives were in immediate danger. And last, Plaintiff actively resisted detention and arrest by engaging in the conduct mentioned above.

        Taking the totality of Plaintiff's actions into consideration, the Court finds that Officer White and Sgt. Floyd's seizure of Plaintiff was reasonable and Plaintiff's Fourth Amendment rights were not violated. Plaintiff was not unreasonably seized and excessive force was not used.

        Concerning Plaintiff's claim for unlawful arrest in violation of his Fourth Amendment rights, the Court finds that Defendants had more than probable cause on which to arrest Plaintiff. The Court need not detail the reasons why disobeying an officer's commands, pointing a gun at police officers and refusing to answer questions, among other actions, constitutes probable cause to arrest. Accordingly, Plaintiff's § 1983 claim for unlawful seizure and arrest are dismissed.

//

//

**B. Confinement Conditions**

Plaintiff also appears to assert a Fourteenth Amendment due process violation challenging the conditions of his confinement as a pretrial detainee following his arrest. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979) (finding that the lower court properly relied on the due process clause rather than the Eighth Amendment in considering claims of pretrial detainees; due process requires that a pretrial detainee not be punished). To determine whether the conditions of a pretrial detainee's confinement constitutes cruel and unusual punishment, a court evaluates whether the plaintiff was deprived of the "minimal civilized measure of life's necessities." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citation omitted).

Plaintiff fails to make any allegations from which the Court can determine that Officer White or Sgt. Floyd had any personal participation in Plaintiff's confinement. Without personal participation, liability under § 1983 cannot arise. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff fails to name any persons who played a direct role in his alleged Fourteenth Amendment violations. Even if named, it does not appear that Plaintiff's due process rights were violated because he does not allege that he was denied any of life's necessities. *Frost*, 152 F.3d at 1128. Accordingly, Plaintiff has not properly alleged that his constitutional rights were violated during his pretrial detention.

**C. Liability of Defendant Metro**

Plaintiff attempts to implicate Metro for the above causes of action by asserting that Metro is engaged in a "sophisticated, enmeshed and entrenched system of racial discrimination acted out against [Plaintiff]." Though § 1983 liability cannot attach through respondeat superior, liability can attach if Plaintiff can show that Metro promulgated a policy, practice, custom, or scheme that actually caused the alleged underlying constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To hold Metro liable, Plaintiff must successfully prove the following: (1) that Plaintiff possessed a constitutional right of which he was deprived; (2) that Metro had a policy; (3)

7

the policy amounted to deliberate indifference to Plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 825 (9th Cir. 1996), *cert. denied*, 519 U.S. 1111 (1997). As discussed above, the Court found that Plaintiff was not deprived of any constitutional rights. Accordingly, there exists no constitutional violations for which Metro can be held liable. For this reason, Plaintiff's § 1983 claims against Metro are dismissed.

### D. § 1985 Conspiracy and Fraud

In addition to his § 1983 claims for alleged constitutional violations, Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights under 42 U.S.C. § 1985(3). The absence of a deprivation of rights under a § 1983 action precludes a conspiracy claim under § 1985(3) predicated on the same allegations. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). Because the Court has found that Plaintiff was not deprived of any constitutional rights, his § 1985 conspiracy claim is dismissed.

Further, Plaintiff blanketly alleges fraud as a cause of action but provides no allegations in support. Accordingly, the claim is dismissed.

### III. State Law Claims

In addition to his federal claims, Plaintiff brings state law claims for false arrest, failure to investigate, falsifying entries on his criminal record, intentional infliction of emotional distress, and malicious prosecution. Regarding Plaintiff's claim for false arrest, the Court has already found that the officers had probable cause to arrest Plaintiff; accordingly, any state law claims for false arrest are dismissed. The Court proceeds to discuss the remaining claims.

### A. Plaintiff's Criminal Record Entries and Defendants' Failure to Investigate

Plaintiff alleges that the supervisor of Metro's Records Division, Sonjia Johnson, who is not a named Defendant, refused to delete two entries on Plaintiff's criminal history record. Plaintiff alleges that the entries are non-criminal yet alleges that they involve an allegation that he was in possession of a stolen vehicle. The Court dismisses the claims against Officer White and

1  Sgt. Floyd because Plaintiff does not allege any personal participation or knowledge of the entries
2  by them.  Concerning Metro, Plaintiff complains that Metro's failure to remove the entries was
3  part of a conspiracy against him motivated by racial discrimination toward him.  Other than
4  Plaintiff's own conclusion that Metro's conduct, via Johnson, was racially motivated, he fails to
5  allege any allegations to support his conclusion.
6         The same defect is present in Plaintiff's claim for failure to investigate.  Plaintiff
7  alleges that if he were a white woman, Metro would have investigated his claim.  Plaintiff offers
8  no support for his conclusion, nor does Plaintiff allege that Officer White or Sgt. Floyd knew of
9  Plaintiff's complaint.  Further, Plaintiff alleges that his union and his employer failed to
10  investigate the attack.  Plaintiff cannot implicate Metro on the action or inaction of his employer or
11  his union.  Nothwithstanding, the statute of limitations bars any recovery.  Nevada Revised Statute
12  § 11.190(e) provides a two year limitation on claims for injuries based on the wrongful or
13  negligent acts of others.  Plaintiff alleges that the attack occurred on February 14, 2004, and that he
14  called Metro to investigate his claims the following day.  Plaintiff commenced this litigation more
15  than three years later on March 30, 2007.
16         For these reasons, Plaintiff's claims for falsifying his criminal history report and
17  failing to investigate are dismissed.
18         **B. Malicious Prosecution, False Arrest and False Imprisonment**
19         The three causes of action–malicious prosecution, false arrest and false
20  imprisonment–share the common element of lack of probable cause.  *Jordan v. State ex rel. Dep't*
21  *of Motor Vehicles and Public Safety*, 110 P.3d 30, 41-42 (Nev. 2005).  As discussed above, the
22  Court found that disobeying an officer's commands, pointing a gun at police officers and refusing
23  to answer questions, among other actions, constituted probable cause to detain and arrest Plaintiff.
24  Accordingly, Plaintiff has failed to successfully allege a necessary element of each of these causes
25  of action and they are therefore dismissed.
26  / /

### C. Intentional Infliction of Emotional Distress

To establish this cause of action, a plaintiff must prove: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or emotional distress suffered by the plaintiff; and (3) actual or proximate causation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). The distress suffered must be "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

On this claim, the Court finds that Plaintiff has not made any allegations from which the Court can find that any of the Defendants engaged in extreme and outrageous conduct. Defendants were warranted in detaining and arresting Plaintiff and Plaintiff was not deprived of any constitutional rights. Given the circumstances, Plaintiff should be thankful that the situation in the Saks parking lot did not escalate into any weapons having been fired. Accordingly, Plaintiff's claim is dismissed.

### D. Failure to Return Property

Plaintiff alleges that Defendants violated a condition of his plea agreement to return all of his property. Defendants are not the proper agency against which to bring a claim for breach of his plea agreement. First, they are not parties to the plea agreement and second, it does not appear that Defendants have control over Plaintiff's property or authority to order its release.

## IV. Remaining Motions

In addition to the dispositive Motion to Dismiss, both Parties file additional Motions, each of which the Court addresses. First, the Court denies Plaintiff's Motion for Emergency Hearing. In this Motion, Plaintiff appears to request a hearing on the claim that he was forced to enter into a plea agreement for the above-mentioned conduct. Defendants, two police officers and a police department, played no role in Plaintiff's plea agreement. The Motion also seeks to "cease and desist" Defendants from further racially motivated acts toward Plaintiff. As

1  outlined above, Plaintiff has failed to allege that Defendants acted with racially discriminating
2  motives.
3        Next, the Court denies Plaintiff's Motion to Stay Proceedings.  Plaintiff argues that
4  he cannot receive a fair and unbiased trial here and requests a stay until he can relocate and find
5  employment outside the United States.  The Court has dismissed all of Plaintiffs claims and thus
6  any Motion to Stay is moot.
7        Third, the Court denies Plaintiff's Motion to Remove All Overly Restrictive
8  Elements of Magistrate Judge Foley's Order, presumably referring to Judge Foley's Order denying
9  Plaintiff's Motion to Compel (#20).  The Court construes Plaintiff's Motion as one for
10 Reconsideration and reviews the record *de novo* in accordance with 28 U.S.C. § 636(b)(1)(A), (B),
11 and (C) and Local Rules IB 3-1 and 3-2.  The Court finds that Judge Foley's Order is not clearly
12 erroneous or contrary to law.
13       Fourth, the Court grants Defendants' Motion to Strike Plaintiff's Opposition to
14 Summary Judgment.  No motion for summary judgment was filed.  To the extent Plaintiff's
15 Opposition can be considered a request for additional time to conduct discovery, the Court has
16 dismissed Plaintiff's Complaint and thus no time for discovery is needed.
17 / /
18 / /
19 / /
20 / /
21 / /
22 / /
23 / /
24 / /
25 / /
26 / /

And last, with his Complaint, Plaintiff concurrently filed a Motion for Preliminary Injunction requesting the same relief asserted in his Complaint. Because his Complaint is dismissed on the merits, the Court denies Plaintiff's Motion for Preliminary Injunction.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#13) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (#29) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction (#2) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Emergency Hearing (#17) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Stay (#26) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Reconsideration (#27) is DENIED.

The Clerk of Court is directed to close the case.

Dated: August 27, 2007.

_____
ROGER L. HUNT
Chief United States District Judge